UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

ANTHONY D. AMAKER,

                Plaintiff,

     -against-                          9:19-CV-1253 (LEK/ATB)

A. BOYD, *et al.*,

                Defendants.

_____

## DECISION AND ORDER

## I.     INTRODUCTION

The Clerk has sent to the Court for review a complaint submitted by pro se plaintiff

Anthony D. Amaker asserting claims pursuant to 42 U.S.C. §§ 1981 and 1983, the Americans

with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Rehabilitation Act of 1973, 29

U.S.C. § 701, *et seq.*, and the Religious Land Use and Institutionalized Persons Act ("RLUIPA),

42 U.S.C. § 2000cc, *et seq.* Dkt. No. 2 ("Complaint").[1]

## II.     SUFFICIENCY OF THE COMPLAINT

### A.  Governing Legal Standard

Under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which

a prisoner seeks redress from a governmental entity or officer or employee of a governmental

---

[1]  This action was originally commenced in the Southern District of New York. By Order
filed May 12, 2017, the Honorable Colleen McMahon of the Southern District of New York
denied Plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(g). Dkt.
No. 4. Judge McMahon found Plaintiff had acquired more than "three strikes" before
commencing the action and failed to show that he was in imminent danger of serious physical
injury at the time of filing. Id. Thereafter, Plaintiff paid the $400.00 filing fee, and by Order filed
August 26, 2019, the action was re-opened. Dkt. No. 12. By Order filed October 3, 2019,
Plaintiff's claims arising out of his incarceration at Bare Hill Correctional Facility were severed
and transferred to the Northern District of New York. Dkt. No. 13.

entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." § 1915A(a)–(b); <u>see also</u> <u>Carr v. Dvorin</u>, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (noting § 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee).

A court may not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (citing <u>Twombly</u>, 550 U.S. at 556). In assessing whether this standard has been met, courts "must accept all allegations in the complaint as true and draw all inferences in the light most favorable to the non-moving party's favor." <u>In re NYSE Specialists Sec. Litig.</u>, 503 F.3d 89, 95 (2d Cir. 2007) (internal citation omitted). Although the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." <u>Iqbal</u>, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" <u>Id.</u> at 679 (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me

accusation." Id. at 678 (citing Twombly, 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. Id. (internal quotation marks and alterations omitted).

The Court must construe pro se complaints liberally, see Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond." Anderson v. Coughlin, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted).

**B.  Summary of the Complaint**

Plaintiff asserts allegations of wrongdoing that occurred while he was incarcerated at Bare Hill Correctional Facility ("Bare Hill C.F.") and in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"). See generally Compl. The following facts are set forth as alleged in the Complaint.

In March 2015, Plaintiff suffered from knee discomfort, "lower herniated discs[,] and sciatica" while incarcerated at Otisville Correctional Facility ("Otisville C. F."). Id. at 3.

On June 30, 2016, Plaintiff was transferred to Bare Hill C. F. from Fishkill Correctional Facility. Id. at 13. Upon his arrival at Bare Hill C. F., Plaintiff "witnessed a racism assault on a dark skin[ned] Hispanic prisoner" and "was subjected to racial intimidation and harassment." Id. Plaintiff was also denied his Ramadan meal for two days despite informing the sergeant in the reception room of his desire for religious meals. Id. at 13–14. After Plaintiff received his Ramadan meals, he was denied permission to attend religious services for two weeks, until he filed a grievance. Id. at 14. The issue was then corrected. Id.

On or about July 30, 2016, Plaintiff slipped in the shower and injured "the second toe on [his] left foot." Id. at 15.[2] Following the injury, Plaintiff was transported by van to "the clinic." Id. at 15–16. Upon arriving at the clinic, Plaintiff was examined by Nurse M. Harmon, who pressured Plaintiff to move his toe even after plaintiff informed her that he was unable to "wiggle [his] toe" and was "in pain." Id. at 16. Thereafter, Harmon asked Plaintiff to sign the injury report that she completed, which he refused to do because the document contained "misinformation" about the condition of his toe. Id. at 16–17. After Plaintiff refused to sign the injury report, Harmon walked away, placed a call on "the phone on the back wall[,]" left the room, and then returned with two corrections officials. Id. at 17. One of those corrections officials, Sergeant Coleman,[3] "asked [Plaintiff] what the problem was and kept . . . disrespectfully telling [Plaintiff] [that he] was harassing the nurse." Id. Plaintiff explained that Harmon wanted him to sign something that contained incorrect information, and Coleman directed Plaintiff to correct the document as he desired and then sign it. Id. Plaintiff then signed the form, and Coleman told Harmon and another correction officer, Albert,[4] to "write a misbehavior report for harassment[.]" Id.

Following the issuance of the misbehavior report, Plaintiff was "cube confine[d]." Id. at 17. As a result of the misbehavior report, Plaintiff had to "wait four days to see a doctor for [his] dislocated toe[,]" during which time he was in "extreme pain." Id. at 18.

---

[2] Plaintiff states that his slip-and-fall happened thirty days after his arrival at Bare Hill C. F. Id. at 13, 15.

[3] Plaintiff has not alleged a first name or initial.

[4] Plaintiff has not alleged a first name or initial.

Thereafter, Plaintiff received a disciplinary hearing on the misbehavior report, which was presided over by Correction Lieutenant Flint.[5] Id. at 17–18. Flint denied Plaintiff's request to introduce into evidence copies of the "schedule for de-escalation of writing [a] misbehavior report and re-training of the staff throughout the State of New York." Id. Flint also caused Plaintiff's statements and objections to be deleted from the transcript of the hearing and denied Plaintiff's request to call a doctor as a witness, even though the proposed witness would have offered testimony that Plaintiff's toe was actually injured. Id. at 18. Flint found that the misbehavior report was justified because Plaintiff "had no injury." Id. Following the hearing, Flint sentenced Plaintiff to thirty days of lost privileges and "cube confinement." Id. Correction Captain A. Boyd upheld this determination. Id.

Plaintiff also raises additional allegations about the manner in which religious practices were handled at Bare Hill C. F. On an unidentified date during Eid-Ul-Fitr, Correction Officer Benior[6] "refused to supply the Sahor [sic] bag to start the fast, despite being told to do so." Id. at 14. In addition, on or before January 11, 2017, Reverend Ranney[7] caused an "erroneous packet" to be distributed, which directed that members of the Nation of Islam to pick up Sahor [sic] bags from the mess hall on February 25, 2017, and return to the gym to eat at 12:30. Id. On January 11, 2017, Plaintiff notified the "facilitator" that the timing and consumption location for the meal was wrong. Id. However, this error was not corrected, and as a result, Plaintiff was not allowed to take food back to his cell. Id. Superintendent B. Yelich, Deputy Superintendents D. Phelix and S.

---

[5] Plaintiff has not alleged a first name or initial.

[6] Plaintiff has not alleged a first name or initial.

[7] Plaintiff has not alleged a first name or initial.

Barton, and Ranney were responsible for the violation of Plaintiff's religious rights because they "allow[ed] non-Nation of Islam members to dictate [the] practice of religion" at Bare Hill C. F. Id.

Plaintiff also seems to suggest that Ranney impaired the rights of Nation of Islam members in other ways, including (1) not placing a DVD in the locker for class; (2) ending the class at 9:00 p.m. instead of 10:00 p.m.; and (3) failing to submit paperwork for a fundraiser. Id. at 15.[8] According to Plaintiff, this is because Ranney has a "conflict of interest" because of "deep-seated racial animosity at Bare Hill C. F." Id.

Additionally, at some unidentified point during Plaintiff's confinement at Bare Hill C. F. and upon Phelix's authorization, Correction Officer Russell[9] refused to pick up mail from Plaintiff's dorm area bound for Plaintiff's attorney because Russell "claim[ed] prisoners [were] smoking." Id. at 20. Plaintiff alleges that as a result of Russell's refusal to pick up his mail, he is "being denied" the ability to file "a post-conviction remedy motion." Id. at 19, 22. Plaintiff also accuses D. Willet[10] and Yelich of "operating under illegal policy [and] overriding the Commissioner['s] authority" regarding Plaintiff's access to legal mail. Id. at 19. Barton was also "in charge of the unconstitutional policy governing the internal and external mail at Bare Hill C. F." Id. Finally, Plaintiff alleges that he has not received timely responses to his grievances and,

---

[8]  Plaintiff has not clarified what this "class" entailed.

[9]  Plaintiff identifies Russell as "John Doe" in the case caption, but then clarifies in the body of the Complaint he believes the individual in question is, in fact, Russell. Id. at 1, 20. Plaintiff has not alleged a first name or initial for Russell.

[10]  The Complaint does not clarify Willet's position at Bare Hill C. F.

on one occasion while he was incarcerated at either Otisville C. F. or Bare Hill C. F., did not receive mail from his brother containing "religious photos." Compl. at 19–20.

The improper conduct at Bare Hill C. F. was a product of DOCCS Commissioner Annucci, Deputy Commissioner Joseph Bellnier, and Deputy Commissioner Jeffrey McCoy's "blind eye in management." Id. at 19. Plaintiff "has suffered and continues to suffer from the pain of [his] dislocated toe," which he "has not been able to bend" since July 30, 2016, yet has been refused follow up treatment with "a foot doctor[.]" Id. at 21. During Plaintiff's confinement at Bare Hill C. F., he also "suffer[ed] from the denial of reasonable accommodation of bus services[,]" was "made to walk long hill and distance [sic] [,]" and "never received adequate or follow up treatment concerning his knee braces and elbow sleeve[.]" Id. at 23.

Construed liberally, Plaintiff asserts the following claims: (1) RLUIPA and First Amendment free exercise claims against Benior, Yelich, Phelix, Barton, and Ranney; (2) First Amendment retaliation claims against Harmon, Coleman, and Albert; (3) First Amendment access-to-courts claims against Willet, Yelich, Barton, Russell, and Phelix; (4) First Amendment free-flow-of-mail claims against Willet, Yelich, Barton, Russell, and Phelix; (5) Eighth Amendment medical indifference claims against Harmon, Coleman, and Albert; (6) Fourteenth Amendment due-process claims against Coleman, Harmon, Albert, Flint and Boyd; (7) Fourteenth Amendment equal-protection claims against Benior, Yelich, Phelix, Barton, Ranney, Harmon, Albert, and Coleman; (8) supervisory liability claims against Annucci, Bellnier, and McCoy based on the aforementioned alleged constitutional violations; and (9) ADA and Rehabilitation Act of 1973 claims based on Plaintiff's alleged failure to receive bus services at unidentified times.

Plaintiff seeks declaratory, injunctive, and monetary relief. Id. at 26–28. For a complete statement of Plaintiff's claims, reference is made to the Complaint.

### C. Analysis

#### 1. Section 1983 claims

"42 U.S.C. § 1983 provides a civil claim for damages against any person who, acting under color of state law, deprives another of the right, privilege or immunity secured by the Constitution or the laws of the United States." Thomas v. Roach, 165 F.3d 137, 142 (2d Cir. 1999). Section 1983 does not create any substantive rights; it provides civil litigants a procedure to redress the deprivation of rights established elsewhere. Id. (citing City of Oklahoma City v. Tuttle, 471 U.S. 808 (1985)). "To prevail on a § 1983 claim, a plaintiff must establish that a person acting under the color of state law deprived him of a federal right." Id.

It is well settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)); Iqbal, 556 U.S. at 676. "[A] Section 1983 plaintiff must 'allege a tangible connection between the acts of the defendant and the injuries suffered.'" Austin v. Pappas, No. 04-CV-7263, 2008 WL 857528, at *2 (S.D.N.Y. Mar. 31, 2008) (quoting Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986)) (other citation omitted). "[V]icarious liability is inapplicable to . . . § 1983 suits." Iqbal, 556 U.S. at 676.

#### a. Request for Injunctive Relief

Plaintiff's Complaint includes a request for injunctive relief. Compl. at 26–27. After filing the Complaint, however, Plaintiff submitted a letter to the Pro Se Intake Unit for the

Southern District of New York in which Plaintiff indicated he is no longer incarcerated. See Dkt. No. 6.

"In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." Shepherd v. Goord, 662 F.3d 603, 610 (2d Cir. 2011) (quoting Salahuddin v. Goord, 467 F.3d 263, 272 (2d Cir. 2006)). Inasmuch as the Complaint requests the Court order officials at Bare Hill C. F. to provide Plaintiff with medical treatment and accommodation, his release from prison moots this request for relief. Khalil v. Laird, 353 F. App'x 620, 621 (2d Cir. 2009) ("When Khalil was released from prison, he no longer had a 'continuing personal stake' in the outcome of this action, and his claims were rendered moot." (quoting Muhammad v. City of N.Y. Dep't of Corr., 126 F.3d 119, 123 (2d Cir. 1997)). Accordingly, Plaintiff's request for injunctive relief is dismissed without prejudice.

### b.  RLUIPA and Free Exercise Claims

RLUIPA affords prison inmates certain protections relevant to exercising their religious beliefs, and provides, in pertinent part, that

> [n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of a burden on that person-
>
> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc–1(a).

"RLUIPA does not authorize claims for monetary damages against state officers in either their official or individual capacities." Holland v. Goord, 758 F.3d 215, 220–22 (2d Cir. 2014). Moreover, as set forth above, since plaintiff is no longer incarcerated, he may not pursue claims for injunctive relief against the named defendants. Accordingly, Plaintiff's RLUIPA claims are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

Additionally, the First Amendment of the United States Constitution guarantees the right to free exercise of religion. See U.S. Const. amend. I; Cutter v. Wilkinson, 544 U.S. 709, 719 (2005). As is true with regard to the First Amendment generally, the Free Exercise Clause applies to prison inmates, subject to appropriate limiting factors. Ford v. McGinnis, 352 F.3d 582, 588 (2d Cir. 2003) (holding that "[p]risoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause" (citing Pell v. Procunier, 417 U.S. 817, 822 (1974)).

To state a claim under the Free Exercise Clause, an inmate "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." Salahuddin, 467 F.3d at 274–75. "For a burden to be substantial, a plaintiff must demonstrate that the government's action pressures him to commit an act forbidden by his religion or prevents him from engaging in conduct or having a religious experience mandated by his faith." Booker v. Maly, No. 12-CV-246, 2014 WL 1289579, at *22 (N.D.N.Y. Mar. 31, 2014), aff'd, 590 F. App'x 82 (2d Cir. 2015).

Plaintiff has failed to state a claim against Benior for violating his right to free exercise of religion. While Plaintiff alleges Benior "refused to supply the Sahor [sic] bag to start the fast"

during Eid-Ul-Fitr even though he was "told to do so," Compl. at 14, Plaintiff does not allege that he never received the bag or allege other facts that might plausibly suggest Benior's purported conduct substantially burdened the exercise of Plaintiff's religion. See Salahuddin, 467 F.3d at 274–75. Consequently, the Court dismisses Plaintiff's free exercise claim against Benior pursuant to § 1915A(b) for failure to state a claim upon which relief may be granted.

Plaintiff has also failed to state a claim against Yelich, Phelix, and Barton for violating his right to free exercise of religion. Plaintiff alleges that these officials are responsible for the alleged violations of Plaintiff's religious rights because they have "allow[ed] non-Nation of Islam members to dictate [the] practice of religion" at Bare Hill C. F. Compl. at 13-14. Yet this allegation is entirely conclusory as Plaintiff fails to explain who these "non-Nation of Islam members" are, how Yelich, Phelix, and Barton "allowed" said members to "dictate" the practice of Plaintiff's religion, or how Yelich, Phelix, and Barton's alleged conduct substantially burdened the exercise of Plaintiff's religion. Thus, Plaintiff's free exercise claims against defendants Yelich, Phelix, and Barton are dismissed pursuant to § 1915A(b) for failure to state a claim upon which relief may be granted..

In contrast to the other defendants and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be construed liberally, see, e.g., Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008), Plaintiff has alleged sufficient facts to warrant a response from Ranney. In so ruling, the Court expresses no opinion as to whether this claim can withstand a properly filed dispositive motion.

### c. Retaliation Claims

Courts must approach claims of retaliation "'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official–even those otherwise not rising to the level of a constitutional violation–can be characterized as a constitutionally proscribed retaliatory act.'" Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003) (quoting Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001), overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002)). To state a plausible retaliation claim, a plaintiff must advance "non-conclusory" allegations establishing "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action." Davis, 320 F.3d at 352 (quoting Dawes, 239 F.3d at 492). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983).

Mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed, Plaintiff has alleged sufficient facts to warrant a response to his retaliation claims against Harmon, Coleman, and Albert. In so ruling, the Court expresses no opinion as to whether these claims can withstand a properly filed dispositive motion

### d. Access-to-Courts Claims

The "right of access to the courts" requires states "to give prisoners a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights." Bounds v. Smith, 430 U.S. 817, 828 (1977), modified on other grounds by Lewis v. Casey, 518 U.S. 343, 350 (1996); see also Bourdon v. Loughren, 386 F.2d 88, 92 (2d Cir. 2004). "However, this right is

not 'an abstract, freestanding right . . . .' and cannot ground a Section 1983 claim without a showing of 'actual injury.'" Collins v. Goord, 438 F. Supp. 2d 399, 415 (S.D.N.Y. 2006) (quoting Lewis, 518 U.S. at 351). The right of access to the courts is also implicated when a prisoner experiences interference with his mail. Davis, 320 F.3d at 351.

To state a claim for denial of access to the courts, a plaintiff must assert non-conclusory allegations demonstrating that (1) the defendant acted deliberately, and (2) the plaintiff suffered an actual injury. Lewis, 518 U.S. at 353. "Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.'" Davis, 320 F.3d at 352 (quoting Jermosen v. Coughlin, 877 F. Supp. 864, 871 (S.D.N.Y. 1995)). The injury must be to an inmate's ability "to attack [his] sentence[ ], directly or collaterally, [or] . . . to challenge the conditions of [his] confinement." Lewis, 518 U.S. at 355. "Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." Id.

Plaintiff alleges that, upon Phelix's authorization, Russell refused to pick up mail from Plaintiff's dorm area bound for Plaintiff's attorney because Russell "claim[ed] prisoners [were] smoking." Compl. at 20. Plaintiff alleges that as a result of Russell's refusal to pick up his mail, he is "being denied" the ability to file "a post-conviction remedy motion." Id. at 19, 22.

Plaintiff appears to have suffered no more than a "delay in being able to work on" his request for post-conviction relief, which does not rise to the level of constitutional violation. See Davis, 320 F.3d at 352 (internal quotation marks omitted) (quoting Jermosen, 877 F. Supp. at 871). Furthermore, Plaintiff does not allege facts regarding the contents of his mailings that would allow the Court to plausibly infer such mailings supported Plaintiff's request for post-

conviction relief. Hence, Plaintiff has not sufficiently alleged that he suffered an "actual injury" as a result of Russell's purported refusal to retrieve Plaintiff's mail with Phelix's permission. Lewis, 518 U.S. at 353, 355.

Furthermore, Plaintiff alleges Barton was "in charge of the unconstitutional policy" that affected Plaintiff's access to mail—and, ultimately, to the courts—and under which Willet and Yelich "operat[ed]." Compl. at 19. Yet Plaintiff has not alleged any facts regarding the content of this purportedly unconstitutional policy to plausibly suggest that Barton, Willet, and Yelich violated his constitutional rights.

In sum, Plaintiff's First Amendment access-to-courts claims are dismissed pursuant to § 1915A(b) for failure to state a claim upon which relief may be granted.

### e. Free-Flow-of-Mail Claims

"In addition to the right of access to the courts, a prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." Davis, 320 F.3d at 351. A prisoner's mail may only be restricted to further "one or more of the substantial governmental interests of security, order, and rehabilitation . . . [and] must be no greater than is necessary or essential to the protection of the particular governmental interest involved." Id. (internal quotation marks omitted) (quoting Washington v. James, 782 F.2d 1134, 1139 (2d Cir. 1986)). "The First Amendment protects prisoners' access to mail directly, unlike the right of access to courts, which protects prisoners' access to mail only derivatively and with respect to given claims." Bellezza v. Holland, No. 09-CV-8434, 2011 WL 2848141, at *6 (S.D.N.Y. July 12, 2011) (dismissing access-to-courts claim for failure to allege injury, but holding that plaintiff adequately alleged a violation of his right to send and receive mail). "It is thus not necessary to

allege actual injury when asserting a violation of one's right to the free flow of mail." <u>Antrobus v. City of New York</u>, No. 11-CV-2524, 2014 WL 1285648, at *4 (S.D.N.Y. Mar. 27, 2014) (citations omitted).

As courts have attempted to balance the competing interests implicated when facilities place restrictions on prison mail, the courts have "consistently afforded greater protection to legal mail than to non-legal mail[.]" <u>Davis</u>, 320 F.3d at 351. "While a prisoner has a right to be present when his legal mail is opened, . . . an isolated incident of mail tampering is usually insufficient to establish a constitutional violation." <u>Davis</u>, 320 F.3d at 351 (citations omitted). However, in <u>Washington v. James</u>, the Second Circuit found that "as few as two incidents of mail tampering could constitute an actionable violation (1) if the incidents suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) if the tampering unjustifiably chilled the prisoner's right of access to the courts or impaired the legal representation received." 782 F.2d at 1139; <u>see also</u> <u>Turner v. Safley</u>, 482 U.S. 78, 84–91 (1987) (noting prison regulations impinging constitutional rights must be "reasonably related to legitimate penological interests").

Plaintiff's allegations regarding interference with access to mail—either incoming or outgoing—are largely conclusory.

As noted with respect to outgoing mail, Plaintiff alleges Russell prevented him from mailing documents to his attorney, which inhibited his ability to seek post-conviction relief. <u>See</u> Compl. at 19. However, the Complaint lacks allegations regarding the contents of the mailings or the number of occasions Russell prevented Plaintiff from mailing material to his attorney. Hence, there is no basis for the Court to plausibly infer that Russell's actions (1) suggested an ongoing practice of censorship unjustified by a substantial government interest, or (2) unjustifiably chilled

Plaintiff's right of access to the courts or impaired his legal representation. See Davis, 320 F.3d at 351 (citing Washington, 782 F.2d at 1139).

Similarly, with respect to incoming mail, Plaintiff alleges that he has not received timely responses to his grievances and, on one occasion while he was incarcerated at either Otisville C. F. or Bare Hill C. F., did not receive mail from his brother containing "religious photos." See Compl. at 19–20. However, it is unclear from the allegations in the Complaint whether (1) the delay in receiving a response to a grievance was the result of any prison official's interference with Plaintiff's mail, or (2) Plaintiff was even incarcerated at Bare Hill C. F. when mail from his brother was confiscated. Consequently, there is no basis for the Court to plausibly infer that Plaintiff's incoming mail was tampered with in any respect by any official at Bare Hill C. F.

Finally, since, as discussed above, Plaintiff has not alleged any facts regarding the content of a policy promulgated by Barton and executed by Willet and Yelich that purportedly prevented Plaintiff from sending or receiving his mail, the Court does not find these defendants to have plausibly violated Plaintiff's rights regarding access to his mail.

Therefore, Plaintiff's free-flow-of-mail claims are dismissed pursuant to § 1915A(b) for failure to state a claim upon which relief may be granted.

### f.  Medical Indifference Claims

Where an inmate was allegedly deprived of medical care, courts construe the rights the plaintiff seeks to vindicate as arising under the Eighth Amendment's prohibition against cruel and unusual punishment. Caiozzo v. Koreman, 581 F.3d 63, 69 (2d Cir. 2009). The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain" and that is incompatible with "the evolving standards of decency that mark the progress of a

maturing society." Estelle v. Gamble, 429 U.S. 97, 102, 104 (1976). While the Eighth

Amendment does not mandate comfortable prisons, neither does it tolerate inhumane treatment

of those in confinement. Farmer v. Brennan, 511 U.S. 825, 832 (1994) (citing Rhodes v.

Chapman, 452 U.S. 337, 349 (1981)).

"In order to establish an Eighth Amendment claim arising out of inadequate medical care,

a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" Chance v.

Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (quoting Estelle, 429 U.S. at 104). "First, the

alleged deprivation must be, in objective terms, sufficiently serious," Chance, 143 F.3d at 702

(internal quotation marks and citations omitted), i.e., "a condition of urgency, one that may

produce death, degeneration, or extreme pain . . . ," Hathaway v. Coughlin, 99 F.3d 550, 553 (2d

Cir. 1996) (internal quotation marks omitted). "Second, the defendant must act with a sufficiently

culpable state of mind," Chance, 143 F.3d at 702 (internal quotation marks and citations

omitted); that is, the plaintiff must demonstrate that the defendant "kn[ew] of and disregard[ed]

an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837.

Non-medical personnel may be held liable for deliberate indifference to medical needs

where a plaintiff demonstrates that the prison personnel intentionally denied or delayed access to

medical care or intentionally interfered with medical treatment once it was prescribed. See Banks

v. No. 8932 Corr. Officer, No. 11-CV-8359, 2013 WL 673883, at *4 (S.D.N.Y. Feb. 25, 2013)

("A prison guard's deliberate indifference to a serious medical need of a prisoner means

intentionally denying or delaying access to medical care or intentionally interfering with medical

treatment once it was prescribed."); see also Estelle, 429 U.S. at 104–05 (1976) (noting that

deliberate indifference may be manifested when prison guards intentionally deny or delay access to medical care).

Here, Plaintiff alleges he suffered from a "dislocated toe" from a slip and fall injury that occurred on or about July 30, 2016, as well as knee discomfort, "lower herniated discs[,] and sciatica" that occurred over a year before that injury. Compl. at 3, 15, 18, 23.

As an initial matter, the Complaint lacks any allegations which plausibly suggest that any of the named defendants from Bare Hill C. F. were aware of—let alone denied Plaintiff treatment for—any knee or back condition from which Plaintiff purportedly suffered. Accordingly, to the extent Plaintiff's medical indifference claim is based on an alleged failure to treat Plaintiff for a knee or back condition during his confinement at Bare Hill C. F., the claim is dismissed pursuant to § 1915A(b) for failure to state a claim upon which relief may be granted.

Regarding Plaintiff's dislocated toe, at this stage of the proceeding—and mindful of the Second Circuit's direction that a pro se plaintiff's pleadings must be liberally construed—Plaintiff has alleged sufficient facts to warrant a response. In so ruling, the Court expresses no opinion as to whether Plaintiff's medical indifference claims against Harmon, Coleman, and Albert can withstand a properly filed dispositive motion.

g.  Due-Process Claims

To successfully state a claim under § 1983 for denial of due process, a plaintiff must establish both the existence of a protected liberty or property interest, and that he or she was deprived of that interest without being afforded sufficient process. Shakur v. Selsky, 391 F.3d 106, 118 (2d Cir. 2004) (citing Kentucky Dep't of Corrs. v. Thompson, 490 U.S. 454, 460 (1989)). Due process generally requires that the state afford individuals "some kind of hearing"

prior to depriving them of a liberty or property interest. DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003).

An inmate's protected liberty interest is implicated where the punishment at issue imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). The duration of the challenged confinement, while not determinative, is a significant factor under Sandin. Id. at 485–86. "[T]he Second Circuit generally takes the position that restrictive confinement, without unusual conditions, for a period of up to 101 days will generally not constitute an atypical hardship, while confinement for a period of more than 305 days has been held to be atypical even if under 'normal conditions.'" Vance v. State of N.Y. Dep't of Corr., No. 18-CV-748, 2018 WL 6047828, at *5 (N.D.N.Y. Nov. 19, 2018) (quoting Davis v. Barrett, 576 F.3d 129, 133 (2d Cir. 2009)). The "atypicality" inquiry under Sandin is normally a question of law. Colon v. Howard, 215 F.3d 227, 230–31 (2d Cir. 2000); Sealey v. Giltner, 197 F.3d 578, 585 (2d Cir. 1999). In making a determination of atypicality and significant hardship, the Court must consider the specific circumstances of the confinement, including both the duration and the conditions thereof. Id.

Plaintiff's thirty-day disciplinary sentence, Compl. at 18, does not, in and of itself, implicate atypicality. See Colon, 215 F.3d at 231; Elleby v. Martucello, No. 16-CV-1335, 2018 WL 3769965, at *3 (N.D.N.Y. Aug. 9, 2018) ("The Court notes that Plaintiff was sentenced to 90 days in SHU which, without additional allegations, is insufficient to establish that he suffered from an atypical and significant confinement as required by Sandin."). Plaintiff's Complaint is completely devoid of any facts regarding the conditions of his SHU confinement. Thus, there is no basis for this Court to plausibly infer that Plaintiff's SHU confinement resulted in the

deprivation of a liberty interest, thereby triggering the procedural safeguards of due process. See, e.g., Elleby, 2018 WL 3769965, at *3 ("Plaintiff does not allege that the conditions in which he was kept were more onerous than normal SHU conditions. Because Plaintiff fails to allege that he suffered from an atypical and significant confinement, Magistrate Judge Peebles correctly found Plaintiff's due process claim should be dismissed."); Shuler v. Brown, No. 07-CV-937, 2009 WL 790973, at *1, *9 (N.D.N.Y. Mar. 23, 2009) ("[A] motion to dismiss can be granted where a prisoner who served less than 101 days in the SHU alleges that his procedural due process rights were violated but does not allege conditions more severe than normal SHU conditions."); Mortimer Excell v. Fischer, No. 08-CV-945, 2009 WL 3111711, at *9 (N.D.N.Y. Sept. 24, 2009) ("[C]ourts have roundly rejected the notion that . . . a short period of confinement, without additional hardships, creates a liberty interest even when confinement is completely segregated, such as when an inmate is sent to . . . [the SHU].") (citing Sealey, 197 F.3d at 589–90).

Without the denial of a cognizable liberty interest, there can be no due-process violation. See Scott v. Albury, 156 F.3d 283, 287 (2d Cir. 1998) ("No right to due process is implicated in the prison context unless a liberty interest has been deprived . . . ."); Gill v. Riddick, No. 03-CV-1456, 2005 WL 755745, at *14 (N.D.N.Y. Mar. 31, 2005) ("If, however, no liberty interest is implicated, then a fortiori, our analysis ceases and the claim should be dismissed.")

However, even if Plaintiff had adequately alleged a protected liberty interest, the Court would not find that Plaintiff has sufficiently pled violations of due process. As an initial matter, the Court notes the due-process protections afforded inmates facing disciplinary hearings affecting liberty or property interests include advance written notice of the charges, a fair and

impartial hearing officer, a hearing that affords the inmate the opportunity to call witnesses and present documentary evidence, and a written statement of the evidence upon which the hearing officer relied in making his determination. Sira v. Morton, 380 F.3d 57, 69 (2d Cir. 2004) (citing, inter alia, Wolff v. McDonnell, 418 U.S. 539, 563–67 (1974)). The hearing officer's findings must be supported by some reliable evidence. Id. (internal citations omitted). "Notwithstanding, '[t]hese procedures, of course, must in certain circumstances give way to institutional safety or correctional goals.'" Sims v. Goord, No. 03-CV-1099, 2007 WL 952071, at *16 (N.D.N.Y. Mar. 29, 2007) (Kahn, J.) (quoting Young v. Hoffman, 970 F.2d 1154, 1156 (2d Cir. 1992), cert. denied, 510 U.S. 837 (1993)).

Plaintiff alleges that Albert and Harmon, at the direction of Coleman, issued him a false misbehavior report. Compl. at 17. The alleged issuance of a false misbehavior report does not, without more, give rise to a cognizable § 1983 claim. See Freeman v. Rideout, 808 F.2d 949, 950, 953 (2d Cir. 1986) ("[T]he filing of unfounded charges is not per se a constitutional violation under section 1983[.]"); Mitchell v. Senkowski, 158 F. App'x 346, 349 (2d Cir. 2005) ("The issuance of false misbehavior reports and provision of false testimony against an inmate . . . violates due process . . . where . . . procedural protections were denied that would have allowed the inmate to expose the falsity of the evidence against him . . . ." (internal citations omitted)). Plaintiff has failed to allege facts to suggest he was not adequately afforded a hearing on his claim that he was falsely accused. Consequently, Plaintiff's due-process claims against Albert, Harmon, and Coleman are dismissed pursuant to § 1915A(b) for failure to state a claim upon which relief may be granted.

Plaintiff also alleges and that, upon the issuance of Coleman, Harmon, and Albert's misbehavior report, he received a disciplinary hearing over which Flint presided. Compl. at 17–18. Flint denied Plaintiff's request to introduce into evidence copies of the "schedule for de-escalation of writing [a] misbehavior report and re-training of the staff throughout the State of New York." Id. Flint also caused Plaintiff's statements and objections to be deleted from the transcript of the hearing and denied Plaintiff's request to call a doctor as a witness, even though the proposed witness would have offered testimony that Plaintiff's toe was actually injured. Id. at 18. Flint found that the misbehavior report was justified because Plaintiff "had no injury." Id. Following the hearing, Flint sentenced Plaintiff to thirty days of lost privileges and "cube confinement," which Boyd upheld. Id.

"To establish a procedural due process claim in connection with a prison disciplinary hearing, an inmate must show that he was prejudiced by the alleged procedural errors, in the sense that the errors affected the outcome of the hearing." Clark v. Dannheim, 590 F. Supp. 2d 426, 429 (W.D.N.Y. 2008) (citing Powell v. Coughlin, 953 F.2d 744, 750 (2d Cir. 1991)). Plaintiff has not explained how the exclusion of the documentary and testimonial evidence at issue impacted the outcome of the hearing since "[w]itnesses or documents may . . . be denied because of lack of relevance or necessity." Sims, 2007 WL 952071, at *16 (quoting Branch v. Goord, 2006 WL 2807168, at *4 (S.D.N.Y. Sept. 28, 2006)). Because the Court cannot plausibly conclude that the exclusion of this evidence or the purported deletion of Plaintiff's statements and objections from the record prejudiced Plaintiff, the Court must dismiss Plaintiff's due-process claims against Flint and Boyd pursuant to § 1915A(b) for failure to state a claim upon which relief may be granted.

<u>h.</u>  <u>Equal-Protection Claims</u>

The Equal Protection Clause of the Fourteenth Amendment requires that the government treat all similarly situated people alike. <u>City of Cleburne, Tex. v. Cleburne Living Ctr.</u>, 473 U.S. 432, 439 (1985). Specifically, the Equal Protection Clause "bars the government from selective adverse treatment of individuals compared with other similarly situated individuals if 'such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" <u>Bizzarro v. Miranda</u>, 394 F.3d 82, 86 (2d Cir. 2005) (quoting <u>LeClair v. Saunders</u>, 627 F.2d 606, 609–10 (2d Cir. 1980)). To state a viable claim for denial of equal protection, a plaintiff generally must allege "purposeful discrimination . . . directed at an identifiable or suspect class." <u>Giano v. Senkowski</u>, 54 F.3d 1050, 1057 (2d Cir. 1995). In the alternative, under a "class of one" theory, a plaintiff must allege that he has been intentionally treated differently from others similarly situated, with no rational basis for the difference in treatment. <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000); <u>DeMuria v. Hawkes</u>, 328 F.3d 704, 706 (2d Cir. 2003).

Liberally construed, Plaintiff asserts equal-protection claims against Benior, Yelich, Phelix, Barton, Ranney, Harmon, Albert, and Coleman based on "racial and religious discrimination[.]" Compl. at 14–15, 18–19, 24. Plaintiff claims that members of the Nation of Islam were treated differently than "non-Nation of Islam members" at Bare Hill C. F. in terms of their ability to engage in religious expression, and that he was denied adequate medical care because of his race. <u>See</u> <u>id.</u> Plaintiff's allegations of discrimination, however, are entirely conclusory in that he does not clarify how he or other Bare Hill C. F. inmates subscribing to the

Nation of Islam were treated differently than non-Nation of Islam members. See Thomas v. Pingotti, No. 17-CV-300, 2017 WL 3913018, at *7 (N.D.N.Y. Sept. 6, 2017) ("Conclusory allegations of disparate treatment or a plaintiff's personal belief of discriminatory intent are patently insufficient to plead a valid claim under the Equal Protection clause.").

Hence, Plaintiff's Fourteenth Amendment equal-protection claims are dismissed pursuant to § 1915A(b) for failure to state a claim upon which relief may be granted.

### i. Supervisory Claims

Supervisory officials may not be held liable merely because they held a position of authority. Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996); see also Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003) ("[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim."). Rather, supervisory personnel may be considered "personally involved" in an alleged constitutional violation only if they (1) directly participated in the violation, (2) failed to remedy that violation after learning of it through a report or appeal, (3) created, or allowed to continue, a policy or custom under which the violation occurred, (4) had been grossly negligent in managing subordinates who caused the violation, or (5) exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that the violation was occurring. Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).[11]

_____

[11] The Second Circuit has not yet addressed how the Supreme Court's decision in Iqbal affected the standards in Colon for establishing supervisory liability. See Grullon v. City of New Haven, 720 F.3d 133, 139 (2d Cir. 2013) (noting that Iqbal may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations" but not reaching the impact of Iqbal on Colon because the complaint "did not adequately plead the warden's personal involvement even under Colon"). "The Court need not put its oar in the water concerning the continued vitality of Colon, however, because,"

Plaintiff alleges Annucci, Bellnier, and McCoy are liable for the aforementioned alleged constitutional violations because they are supervisors within the DOCCS prison system. See Compl. at 19. Yet Plaintiff has not averred any facts to plausibly suggest Annucci, Bellnier, and McCoy are liable under Colon.

Thus, Plaintiff's claims against Annucci, Bellnier, and McCoy are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

### j. ADA and Rehabilitation Act of 1973 Claims

Title II of the ADA "proscribes discrimination against the disabled in access to public services." Harris v. Mills, 572 F.3d 66, 73 (2d Cir. 2009) (citation omitted). The statute provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." Id. (citing 42 U.S.C. § 12132). Similarly, § 504 of the Rehabilitation Act of 1973 requires that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a).

The Second Circuit has noted that "the standards under both statutes are generally the same[.]" Wright v. N.Y.S. Dep't of Corr., 831 F.3d 64, 72 (2d Cir. 2016). Moreover, where, as here, the subtle distinctions between the statutes are not implicated, courts "'treat claims under

---

as in another case decided within this circuit, "Plaintiff's complaints founder even under Colon." See Samuels v. Fischer, 168 F. Supp. 3d 625, 635–36 (S.D.N.Y. 2016).

the two statutes identically.'" Id. (quoting Henrietta D. v. Bloomberg, 331 F.3d 261, 272 (2d Cir. 2003)).

"In order to establish a prima facie violation under these acts, [an inmate] must show that (1) he is a qualified individual with a disability; (2) DOCCS is an entity subject to the acts; and (3) he was denied the opportunity to participate in or benefit from DOCCS's services, programs, or activities or DOCCS otherwise discriminated against him by reason of his disability." Wright, 831 F.3d at 72 (citing Henrietta D., 331 F.3d at 272).

"[N]either Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials." Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001). Thus, Plaintiff's ADA and Rehabilitation Act of 1973 claims are dismissed with prejudice to the extent these claims are asserted against any of the named defendants in their individual capacities.

Moreover, to the extent Plaintiff intended to assert official capacity claims against one or more of the named defendants, his ADA and Rehabilitation Act of 1973 claims are nonetheless deficient because the Complaint lacks any allegations that plausibly suggest that (1) Plaintiff is a qualified individual with a disability, or (2) he was denied the opportunity to participate in or benefit from DOCCS services, programs, or activities or that DOCCS otherwise discriminated against him by reason of his disability.[12]

Plaintiff identifies his "disability" as a "condition in [his] right and left knees, lower back, herniated discs, and sciatica." Compl. at 3. Plaintiff's vague description of his condition is

---

[12] DOCCS is undoubtedly subject to the ADA and Rehabiliation Act of 1973. See Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009).

insufficient to plausibly suggest that it constitutes a "disability" within the meaning of the ADA or Rehabilitation Act of 1973. See Weixel v. Bd. of Educ. of City of N.Y., 287 F.3d 138, 147 (2d Cir. 2002) (noting that a plaintiff qualifies as disabled under the ADA when he (1) shows that he "suffers from a physical or mental impairment[;]" (2) identifies an "activity claimed to be impaired and establish[es] that it constitutes a major life activity[,]" and (3) shows that the impairment "substantially limits the major life activity previously identified" (internal quotation marks omitted)).

Furthermore, even if the Court were to find Plaintiff disabled under the ADA and Rehabilitation Act of 1973, the Complaint is entirely devoid of any allegation that Plaintiff was discriminated against on the basis of his alleged disability. Indeed, the only alleged deprivation Plaintiff suffered was a denial of bus transportation. See Compl. at 23. However, Plaintiff does not allege he ever requested this accommodation during his confinement at Bare Hill C. F., let alone notified any Bare Hill C. F. officials of his purported disability. Thus, there is no basis for the Court to plausibly infer that Plaintiff was denied bus transportation because of any disability. See Henrietta D., 331 F.3d at 278 (stating that the term "by reason of his disability" in [the ADA] really means that the "plaintiff must prove that the denial is because of the disability").

Hence, Plaintiff's ADA and Rehabilitation Act of 1973 claims are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted.

\*     \*     \*

Although Plaintiff has paid the filing fee, he may request the Court order "that service be made by a United States marshal." Fed. R. Civ. P. 4(c)(3). Therefore, in order to advance the disposition of this action, and in light of the fact that Plaintiff is proceeding pro se, Plaintiff is

advised that he may submit a motion requesting service by the U.S. marshals on the following

conditions: (1) Plaintiff must pay in full the service fee due to the U.S. marshal in advance by

money order or certified check;[13] and (2) he must provide all necessary papers for service,

including a completed U.S. Marshals Form (USM-285 Form) and copy of the Complaint for each

defendant to be served. Plaintiff is directed to send the service documents and payment of the

service fee to the Clerk of the United States District Court, Northern District of New York, 7th

Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367, to be forwarded by

the Clerk to the U.S. marshals.

And if Plaintiff wishes to amend his Complaint, he must file an amended complaint that

complies with Rule 15 of the Federal Rules of Civil Procedure. Any amended complaint, which

shall supersede and replace the original Complaint in its entirety, must allege claims of

misconduct or wrongdoing against each named defendant, which Plaintiff has a legal right to

pursue, and over which this Court may properly exercise jurisdiction. Any amended complaint

filed by Plaintiff must be signed by him and must also comply with the pleading requirements of

Rules 8 and 10 of the Federal Rules of Civil Procedure.

## III.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the following of Plaintiff's § 1983 claims **SURVIVE** sua sponte review

and require a response: (1) First Amendment free exercise claim against Ranney; (2) First

---

[13]    Payment in cash or by personal check is not acceptable. For service by mail, the fee is $8.00 per summons and complaint. The cost of service by mail on the surviving defendants in this action is therefore $32.00. Plaintiff is also advised that, if initial service is unsuccessful, he will be required to pay the U.S. marshal any additional fee, also in advance, for subsequent service attempts according to the fee schedule set by the U.S. marshal.

Amendment retaliation claims against Harmon, Coleman, and Albert; and (3) Eighth

Amendment medical indifference claims against Harmon, Coleman, and Albert; and it is further

**ORDERED**, that Ranney, Harmon, Coleman, and Albert (or their counsel) respond to the

Complaint as provided for in the Federal Rules of Civil Procedure; and it is further

**ORDERED**, that Plaintiff's claims against the above-captioned defendants in their

individual capacities for violations of the ADA and Rehabilitation Act of 1973 are **DISMISSED**

**with prejudice**.

**ORDERED**, that the following of Plaintiff's claims are **DISMISSED without prejudice**

pursuant to 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted:

(1) RLUIPA and First Amendment free exercise claims against Benior, Yelich, Phelix, Barton,

and Ranney; (2) First Amendment access-to-courts claims against Willet, Yelich, Barton,

Russell, and Phelix; (3) First Amendment free-flow-of-mail claims against Willet, Yelich,

Barton, Russell, and Phelix; and (4) Fourteenth Amendment due-process claims against

Coleman, Harmon, Albert, Flint and Boyd; (5) Fourteenth Amendment equal-protection claims

against Benior, Yelich, Phelix, Barton, Ranney, Harmon, Albert, and Coleman; (8) supervisory

liability claims against Annucci, Bellnier, and McCoy based on the aforementioned alleged

constitutional violations; and (9) ADA and Rehabilitation Act of 1973 claims against the above-

captioned defendants in their official capacities.

**ORDERED**, that Benior, Yelich, Phelix, Barton, C.O. John Doe (a.k.a. Russell), Willet,

Flint, Boyd, Annucci, Bellnier, and McCoy are **DISMISSED without prejudice** as defendants

in this action; and it is further

**ORDERED**, that the Clerk shall issue summonses and forward them, along with copies of the Complaint, to Plaintiff. It is Plaintiff's responsibility to immediately serve Ranney, Harmon, Albert, and Coleman each with a summons and a copy of his Complaint in accordance with the Federal Rules of Civil Procedure. The Clerk shall forward a copy of the summons and Complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order; and it is further

**ORDERED**, that Plaintiff may submit a motion requesting service of process by the U.S. marshal in accordance with Federal Rule of Civil Procedure 4(c)(3). The Clerk shall send Plaintiff four blank USM-285 Forms for his use should he choose to request such service. As a courtesy, the Clerk shall also send Plaintiff one copy of his Complaint for his use in making additional copies; and it is further

**ORDERED**, that all pleadings, motions, and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367. Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. All motions will be decided on submitted papers without oral argument unless otherwise ordered by the Court. **<u>Plaintiff is also required to promptly notify, in writing, the Clerk's Office and all parties or their counsel of any change in Plaintiff's address; his failure to do so may result in the dismissal of this action</u>**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Order on Plaintiff in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:      January 14, 2020
                 Albany, New York

Lawrence E. Kahn
U.S. District Judge